## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF MISSOURI

| | |
|---|---|
| WHC zShuttle, LLC,<br><br>          Plaintiff,<br><br>     v.<br><br>ShuttleFare.com, LLC and Gregory Bessoni,<br><br>          Defendants. | **JURY TRIAL DEMANDED** |

## COMPLAINT AND JURY DEMAND

Plaintiff, WHC zShuttle, LLC ("zShuttle"), for its complaint against Defendants, ShuttleFare.com, LLC and Gregory Bessoni (collectively "Defendants"), states:

### Nature of the Case

1.      This is a civil action for trademark counterfeiting, direct and contributory trademark infringement, and unfair competition and false designation of origin arising under the Lanham Act, 15 U.S.C. § 1051 *et seq*., and for common law trademark infringement and unfair competition.

2.      By this action, zShuttle seeks equitable and legal remedies for Defendants' repeated, persistent, and intentional counterfeiting and infringement of zShuttle's intellectual property rights.

### Parties

3.      Plaintiff WHC zShuttle, LLC is a limited liability company organized and existing under the laws of the State of Missouri, with a principal place of business at 1300 Lydia Ave, Kansas City, Missouri 64106.

1

4.      Upon information and belief, Defendant ShuttleFare.com, LLC ("ShuttleFare") is a limited liability company organized and existing under the laws of the State of Connecticut, with a principal place of business at 222 Old Boston Post Rd., Old Saybrook, Connecticut 06475.

5.      While Defendant ShuttleFare was previously registered with the Connecticut Secretary of State Office, its current status is listed as 'forfeited.' Upon information and belief, Defendant ShuttleFare is not registered with the Secretary of State Office of any other state.

6.      Upon information and belief, Defendant Gregory Bessoni ("Bessoni") is a resident of the state of New York. Upon information and belief, Bessoni is the founder of ShuttleFare, and therefore, directs and controls the activities of ShuttleFare, including ShuttleFare's policies, procedures, and compliance with intellectual property laws, and knowingly has authorized, directed, and/or participated in the infringing activities described in the present Complaint.

## Jurisdiction and Venue

7.      This Court has subject-matter jurisdiction over zShuttle's federal Lanham Act claims pursuant to 28 U.S.C. §§ 1331 and 1338.

8.      This Court has subject-matter jurisdiction over zShuttle's related claims arising under state law pursuant to 28 U.S.C. §§ 1338 and 1367.

9.      This Court has personal jurisdiction over Defendants because, upon information and belief, Defendants engage in continuous and systematic business activities within the State of Missouri and this District, such as rendering, offering for sale, selling and providing services to Missouri-based customers within Missouri and this District; and/or regularly solicit business in Missouri and this District, deriving substantial revenue from interstate commerce, the State of Missouri, and this District; and/or have purposefully directed substantial activities at the residents of Missouri and this District by means of advertising and selling services in violation of zShuttle's

2

intellectual property rights, as further described in this Complaint; and/or have committed and directed the willful, tortious conduct described herein directed at persons located in Missouri and this District; and/or intended, knew, or reasonably should have known that their conduct would infringe zShuttle, which is organized under the laws of the State Missouri; and/or have committed and directed the willful, tortious conduct described herein directed at persons located in Missouri and this District; and/or have otherwise made or established contacts with the State of Missouri sufficient to permit the exercise of personal jurisdiction. Specifically, Defendants offer information about Super Shuttle services offered at the Kansas City Airport (MCI), located in Missouri and within this District, via its website www.shuttlefare.com, where Customers can select a ride for Defendants' "Super Shuttle" or "SuperShuttle" services at the MCI Airport.

10.     Venue is proper in this District under 28 U.S.C. § 1391(b) because the events giving rise to the claims complained of herein occurred in this District and the intellectual property that is the subject of this action is owned by zShuttle, who is situated in this District.

## Factual Background

### A. zShuttle's Business History and Intellectual Property Rights

11.     SuperShuttle International Inc. was a pioneering company in the shared-ride airport shuttle industry.

12.     In April 2020, zShuttle acquired SuperShuttle International, Inc., becoming the successor-in-interest to its trademark and service mark rights. As a result of this acquisition, SuperShuttle, SuperShuttle Express, and ExecuCar are now wholly owned subsidiaries of zShuttle.

13.     Today, zShuttle stands as one of the nation's largest providers of airport transportation and reservation services, specializing in arranging and providing direct, shared, and luxury transport to and from airports at over 70 locations.

3

14.    zShuttle owns U.S. Registration No. 1422276 for the standard character mark SUPERSHUTTLE®, filed September 22, 1983, and registered December 23, 1986, in connection with "airport passenger ground transportation services" in International Class 39, claiming a first use date at least as early as January 17, 1983, in connection with the aforementioned services.

15.    zShuttle owns U.S. Registration No. 5498142 for the standard character mark SUPERSHUTTLE®, filed May 12, 2015, and registered June 19, 2018, in connection with "Downloadable software for scheduling fee-for-service ground transportation" in International Class 09, claiming a first use date at least as early as June 30, 2010, in connection with the aforementioned services.

16.    zShuttle, including through its predecessors in interest, has continuously used the above SUPERSHUTTLE® marks in connection with (i) airport passenger ground transportation services since at least as early as 1983, and (ii) downloadable software for scheduling fee-for-service ground transportations since at least as early as 2010.

17.    zShuttle owns U.S. Registration Nos. 6790473 and 6790472 for the standard character marks SUPERSHUTTLE EXPRESS® and EXPRESS BY SUPERSHUTTLE®, filed September 09, 2020, and registered July 12, 2022, in connection with "transportation reservation services" in International Class 39.

18.    zShuttle has continuously used the above SUPERSHUTTLE EXPRESS® and EXPRESS BY SUPERSHUTTLE® marks in connection with its transportation reservation services since at least as early as 2020 and 2021, respectively.

19.    In addition to its standard character marks, zShuttle owns the following design mark registrations for its signature SUPERSHUTTLE® transportation vans, which were filed on

4

December 12, 1988 and November 16, 1989, respectively, and registered on December 25, 1990

in connection with airport transportation services in International Class 39[1]:

| | |
|---|---|
|  SUPERSHUTTLE (& Design) Reg. No. 1629477 |  SUPERSHUTTLE (& Design) Reg. No. 1629481 |

20.     zShuttle, including through its predecessors in interest, has continuously used the

above SUPERSHUTTLE® van design marks in commerce since at least as early as 1983.

21.     zShuttle also owns the following design marks for SUPERSHUTTLE®

transportation vans, filed on February 6, 2012, and registered on November 27, 2012 and

November 4, 2014, respectively, which zShuttle, including through its predecessors in interest, has

continuously used in commerce respectively since at least as early as 2008 and 2010, in connection

with airport ground, charter, and door-to-door transportation services in International Class 39:

| | |
|---|---|
|  SUPERSHUTTLE (& Design) Reg. No. 4251556 |  SUPERSHUTTLE (& Design) Reg. No. 4632725 |

---

[1] The lining is a feature of these marks, and represents the colors blue and yellow.

22.     Collectively, zShuttle's trademarks identified in paragraphs 13-21 of the present Complaint may be hereinafter referred to as the "SUPERSHUTTLE® Marks." True copies of the Certificates of Registration and status pages from the Trademark Status & Document Retrieval system ("TSDR") for the SUPERSHUTTLE® Marks are attached as **Exhibit 1**, which provide *prima facie* evidence of zShuttle's exclusive right to use the marks, as reflected therein, and establish zShuttle's incontestable rights in the SUPERSHUTTLE® Marks.

23.     zShuttle also owns U.S. Registration No. 1716579 for the standard character mark EXECUCAR®, filed August 30, 1991, and registered September 15, 1992, in connection with "airport passenger ground transportation services and charter transportation services" in International Class 39 (the "EXECUCAR® Mark").

24.     zShuttle, including through its predecessors in interest, has continuously used the EXECUCAR® Mark in connection with its transportation services since at least as early as 1989. True copies of the Certificate of Registration and TSDR status pages for the EXECUCAR® Mark are attached as **Exhibit 2**, which provides *prima facie* evidence of zShuttle's exclusive right to use the mark, as reflected therein, and establish zShuttle's incontestable rights in the EXECUCAR® Mark.

25.     zShuttle prominently uses the SUPERSHUTTLE® Marks and EXECUCAR® Mark on zShuttle's website, social medial accounts, physical signage, transportation vehicles, employee uniforms, and on print and digital advertising and promotional materials.

26.     Representative examples of zShuttle's use of the SUPERSHUTTLE® Marks and EXECUCAR® Mark are shown below:

-     On zShuttle's website and in its domain name (https://www.supershuttle.com/ride-choices/non-stop-shuttle/; https://www.supershuttle.com/ride-choices/black-car/)

6



supershuttle.com/ride-choices/non-stop-shuttle/
Relaunch to update
Trello
TESS
USPTO TTABVUE. Tr...
TMEP
TBMP
NetDocs
TMView
WIPO Global Brand...
WHOIS Domain Loo...
SuperShuttle Express
Log in
Sign up
Get Quote
Ride Choices
Locations
My Trips
Edit/Cancel Trip
Business
Drive With Us
It's OK not to share, We Get You There.
EXPRESS BY SUPERSHUTTLE
Express Ride. Take a vehicle straight to your destination with no stops in between.
Book a ride
Search
11:31 AM
10/2/2024

supershuttle.com/ride-choices/black-car/
Relaunch to update
Trello
TESS
USPTO TTABVUE. Tr...
TMEP
TBMP
NetDocs
TMView
WIPO Global Brand...
WHOIS Domain Loo...
SuperShuttle Express
Log in
Sign up
Get Quote
Ride Choices
Locations
My Trips
Edit/Cancel Trip
Business
Drive With Us
We Get You AIR.
EXECUCAR
Black Car Sedan or SUV. If your for exclusive, affordable luxury car service for business or pleasure this is the option for you. Black car service is provided by ExecuCar.
Book a ride
Search
11:28 AM
10/2/2024

- On zShuttle's Instagram (https://www.instagram.com/supershuttle/)



- On zShuttle's employee uniforms ([https://www.instagram.com/p/BareR8xAzv9/](https://www.instagram.com/p/BareR8xAzv9/))



27.     zShuttle also prominently uses its SUPERSHUTTLE® Marks on its well-recognized, signature blue and yellow vans, a representative example of which is seen at https://www.instagram.com/p/BamfCuJAXcu/, and pictured below:



28.     In addition to zShuttle's continuous and prominent use of the SUPERSHUTTLE® and EXECUCAR® Marks, zShuttle occasionally licenses the rights to use such marks to third-party affiliates to drive business growth.

29.     zShuttle's licensing agreements carefully specify service areas and authorized use of the licensed mark, and subject the third-party affiliates to quality control and supervision

mandates, which ensure zShuttle that services offered under their licensed marks are of the highest quality and consistent with zShuttle's own services offered in connection with the marks.

30.     zShuttle, on its own and through its predecessors in interest and licensees, has extensively and continuously used, promoted, marketed, and advertised its SUPERSHUTTLE® Marks and EXECUCAR® Mark, and throughout the past four decades, has enjoyed substantial sales of services offered under, in connection with, and/or bearing said marks.

31.     zShuttle, on its own and through its predecessors in interest and licensees, has made exclusive use of the SUPERSHUTTLE® Marks since at least as early as 1983, and the EXECUCAR® Mark since at least as early as 1989, in connection with the above-noted airport transportation and reservation services, which have been promoted and provided nationwide.

32.     zShuttle, on its own and/or through its predecessors in interest, has expended substantial resources, engaged in extensive marketing, and vigorously enforced its intellectual property rights to build and maintain the considerable goodwill it enjoys in the SUPERSHUTTLE® Marks and EXECUCAR® Mark, and the valuable reputation associated therewith.

33.     As a result of zShuttle's established history of quality airport transportation and reservation services, together with its advertising and providing of services prominently bearing the SUPERSHUTTLE® Marks and EXECUCAR® Mark, zShuttle's marks are recognized by consumers and identify zShuttle as the source of services provided under the SUPERSHUTTLE Marks® and EXECUCAR® Mark.

**B. Defendants' Business and Willful Violation of zShuttle's Intellectual Property**

34.     Upon information and belief, Defendant ShuttleFare was formed in 2008, and organized under the laws of the State of Connecticut for the purpose of comparing and booking airport transportation services.

35.     According to the 'About ShuttleFare' page on ShuttleFare's website, <https://www.shuttlefare.com/home/about>, ShuttleFare was founded by Defendant Bessoni.

36.     Upon information and belief, Defendant Bessoni still owns, operates, and or manages the transportation services provided through ShuttleFare, and directs and controls the activities of ShuttleFare, including ShuttleFare's policies, procedures, and compliance with intellectual property laws.

37.     On or about May 28, 2024, on behalf of zShuttle, counsel for zShuttle sent a letter to Defendants ShuttleFare and Bessoni, advising them of zShuttle's prior intellectual property rights in the SUPERSHUTTLE® Marks in connection with airport transportation and reservation services, and demanding that Defendants immediately cease and desist from all use of zShuttle's proprietary intellectual property, including but not limited to:

-   all uses of and references to the SUPERSHUTTLE® Marks, and any use of confusingly similar variations of the SUPERSHUTTLE® Marks, in connection with airport transportation services, including use on the Internet, ShuttleFare website, social media sites, marketing materials, vehicles, phone book listings, Internet banner and sponsored ads, web pages, or as part of an Adword, business name, keyword, or domain name; and

-   all uses and displays of zShuttle's proprietary and copyright-protected promotional videos and images.

12

Attached as **Exhibit 3** are preserved screenshots showing representative examples of intellectual property infringement found on ShuttleFare's website and in ShuttleFare's advertising from May 22, 2024 and May 23, 2024.

38.     On that same day, Bessoni responded to zShuttle's notice of infringement, asserting a fair use defense and stating that ShuttleFare would take steps to address zShuttle's concerns. These steps included: (i) displaying prominent disclaimers clarifying that zShuttle is not affiliated with ShuttleFare; (ii) monitoring its content to ensure use of the SUPERSHUTTLE® Marks are used for zShuttle services in a manner that does not imply endorsement or affiliation; (iii) removing images and videos containing zShuttle's proprietary content; and (iv) modifying its Google Ads and sponsored content to prevent any appearance of affiliation with zShuttle.

39.     On June 18, 2024, counsel for zShuttle acknowledged that ShuttleFare had removed some of zShuttle's copyrighted content from the ShuttleFare website, but emphasized that further action was required to fully address and avoid infringement.

40.     Specifically, zShuttle renewed its demands that ShuttleFare cease all use of the SUPERSHUTTLE® Marks, EXECUCAR® Mark, and any other intellectual property belonging to zShuttle. zShuttle noted that ShuttleFare's proposition of a disclaimer and content monitoring alone was insufficient.

41.     In response to zShuttle's subsequent correspondence, Bessoni stated that ShuttleFare would not agree to remove the "SuperShuttle" webpages or URLs, as removing pages and/or changes to URLs "will have a huge impact on our site."

42.     On August 20, 2024, counsel for zShuttle again responded to Bessoni's latest correspondence, stating that zShuttle did not accept Bessoni's proposed terms, reiterating that the

13

Case 4:24-cv-00699-SRB   Document 1   Filed 10/25/24   Page 13 of 26

ShuttleFare website continued to blatantly infringe the SUPERSHUTTLE® Marks, and again demanding that such infringing activity be discontinued.

43.     Despite requesting a response by August 30, 2024, zShuttle has received no reply from Defendants to date.

44.     Defendants continue to infringe zShuttle's intellectual property rights on the ShuttleFare website, which includes, but is not limited to:

  a.   use of the SUPERSHUTTLE® Marks or confusingly similar variations thereof:

       i.    in ShuttleFare's URL subdomain, for its 'SuperShuttle' subpage namely, <https://www.shuttlefare.com/supershuttle>;

       ii.   throughout ShuttleFare's above-linked 'SuperShuttle' webpage, which is titled *Learn More about SuperShuttle for your next airport ride*, and includes an 'All You Need to Know About Super Shuttle' section as well as a 'Top SuperShuttle Airports' list;

       iii.  on approximately 51 other ShuttleFare subpages, that advertise 'SuperShuttle' in connection with numerous airports around the U.S.;

       iv.   on ShuttleFare's home page, <https://www.shuttlefare.com/>;

       v.    in sponsored Google advertising and sponsored ad keywords;

       vi.   on ShuttleFare's 'About ShuttleFare' webpage, as one of ShuttleFare's transportation partners, <https://www.shuttlefare.com/home/about>; and

  b.   use of the EXECUCAR® Mark on:

       i.    ShuttleFare's above-linked 'SuperShuttle' subpage;

ii. on ShuttleFare's 'About ShuttleFare' webpage, as one of ShuttleFare's transportation partners, <https://www.shuttlefare.com/home/about> and

c. an active link to zShuttle's official website for SuperShuttle on ShuttleFare's 'About ShuttleFare' webpage, <https://www.shuttlefare.com/home/about>.

See **Exhibit 4** for representative examples of the aforementioned infringements.

45. In particular, Defendants have used zShuttle's registered trademarks to advertise its services in a large number of jurisdictions, including Kansas City Airport (MCI). See **Exhibit 5** for true copies preserved from Defendants' website (<https://www.shuttlefare.com/supershuttle>; <https://www.shuttlefare.com/super_shuttle/kansas_airport_shuttle_mci>).

46. Defendants are using identical counterfeit, and nearly identical variations of zShuttle's SHUTTLEFARE® Marks and EXECUCAR® Mark to promote and provide identical airport transportation and reservation services, effectively palming off the goodwill that zShuttle has established in its marks.

47. Defendants' advertising, promotion, offering, and sale of airport transportation and reservation services are directed to the same consumers nationwide to which zShuttle advertises, promotes, offers, and sells its airport transportation and reservation services.

48. Defendants' use of identical counterfeit and nearly identical variations of zShuttle's SHUTTLEFARE® Marks and EXECUCAR® Mark in connection with identical services marketed to identical consumers is likely to—and inevitably will—lead consumers to erroneously believe that Defendants are affiliated, connected, or otherwise associated with zShuttle and the services offered and provided under the SUPERSHUTTLE® Marks and EXECUCAR® Mark.

15

49.     The above confusion is further compounded by Defendants' references on the ShuttleFare website to zShuttle as a partner, use of 'supershuttle' as a subdomain, use of 'supershuttle' in paid advertising, and the active links on the ShuttleFare website directing consumers to zShuttle's website.

50.     Defendants' continued violation of zShuttle's intellectual property rights after various notifications from zShuttle is and has been willful, in bad faith, with malicious intent, and with blatant and intentional disregard to zShuttle's proprietary rights established in its SUPERSHUTTLE® Marks and EXECUCAR® Mark.

51.     Upon information and belief, Defendants have generated profits through the misappropriation of zShuttle's SUPERSHUTTLE® Marks and EXECUCAR® Mark, to which they are not entitled.

52.     Defendants have clear knowledge of the above-detailed infringing activities and continue to display, direct, and contribute to ongoing infringing operations. Therefore, Defendants are infringing on zShuttle's proprietary SUPERSHUTTLE® Marks and EXECUCAR® Mark by knowingly authorizing, directing, controlling, and/or substantially participating in the advertising, promotion, provision, offer for sale, and/or sale of identical and competing airport transportation and reservation services under such counterfeit marks or confusingly similar marks, without authorization from the true rights owner.

### Count I – Federal Trademark Counterfeiting
### 15 U.S.C. § 1114

53.     zShuttle realleges and incorporates by reference the averments of all preceding paragraphs, as if fully set forth in this paragraph.

54.     Defendants have used counterfeit marks that are identical to, or substantially indistinguishable from zShuttle's SUPERSHUTTLE® Marks and EXECUCAR® Mark on

16

services covered by zShuttle's trademark registrations, namely, airport transportation and reservation services.

55.     Defendants have intentionally and willfully used these counterfeit marks, without authorization, knowing they are counterfeit in connection with the advertising, offering, sale, and provision of services identical to those offered by zShuttle, and in a manner likely to cause confusion or mistake, or to deceive consumers as to the source or origin of Defendants' services.

56.     Defendants' unauthorized use of zShuttle's SUPERSHUTTLE® Marks and EXECUCAR® Mark is likely to cause the public to believe that Defendants' services are the same as zShuttle's services, and/or that Defendants are authorized, sponsored, or approved by zShuttle, or otherwise affiliated, connected, or associated with or in some way related to zShuttle—which is not true.

57.     As a result of Defendants' unauthorized use of zShuttle's SUPERSHUTTLE® Marks and EXECUCAR® Mark, Defendants are unfairly benefiting and profiting from zShuttle's highly regarded reputation and goodwill established through zShuttle's long-term use of its incontestable marks.

58.     Defendants' actions described in the present Complaint are to the substantial and irreparable injury to the public, zShuttle, and zShuttle's proprietary trademarks, and the substantial goodwill represented thereby.

59.     Defendants' actions demonstrate an intentional, willful, and malicious intent to counterfeit the federally registered SUPERSHUTTLE® Marks and EXECUCAR® Mark for private financial gain.

60.    Defendants' unauthorized use of the federally registered SUPERSHUTTLE®
Marks and EXECUCAR® Mark constitutes trademark counterfeiting in violation of Section 32 of
the Lanham Act, 15 U.S.C. §§ 1114 and 1116(d).

61.    Defendants' counterfeiting activities have continued subsequent to zShuttle's
notice of infringement of the SUPERSHUTTLE® Marks and EXECUCAR® Mark, demonstrating
an intentional, willful, and malicious intent to counterfeit zShuttle's federally registered marks and
making this an exceptional case.

62.    Defendants' counterfeiting conduct entitles zShuttle to injunctive relief,
compensatory damages, treble damages, disgorgement of profits, and costs and attorneys' fees, or,
at zShuttle's election, statutory damages of up to $2,000,000 per counterfeit mark per type of goods
and/or services advertised, sold, and/or offered for sale, pursuant to 15 U.S.C. § 1117.

## Count II – Trademark Infringement
## 15 U.S.C. § 1114

63.    zShuttle realleges and incorporates by reference the averments of all preceding
paragraphs as if set forth fully in this paragraph.

64.    zShuttle owns all right, title, and interest in the registered SUPERSHUTTLE®
Marks and EXECUCAR® Mark.

65.    zShuttle, on its own and/or through its predecessors in interest and/or licenses, has
had rights in the SUPERSHUTTLE name in connection with airport transportation and reservation
services, dating back to at least as early as 1983, and rights in the EXECUCAR® Mark in
connection with airport transportation services dating back to at least as early as 1989.

66.    Defendants' use in commerce of one or more of the registered SUPERSHUTTLE®
Marks and the EXECUCAR® Mark infringes zShuttle's rights in its registered marks, in violation

of 15 U.S.C. § 1114 because it renders Defendants' airport transportation and reservation services confusingly similar to identical services zShuttle offers under its identical registered marks.

67. Defendants' unauthorized use of one or more of the registered SUPERSHUTTLE® Marks and the EXECUCAR® Mark creates the erroneous impression in consumers' minds that Defendants' services are approved, sponsored, endorsed, or guaranteed by, or are in some way affiliated with zShuttle and the zShuttle's registered marks.

68. Defendants' use in commerce of one or more of the registered SUPERSHUTTLE® Marks and EXECUCAR® Mark has caused irreparable injury to zShuttle by destroying consumers' association of the SUPERSHUTTLE® Marks and EXECUCAR® Mark with zShuttle, allowing Defendants to unjustly profit from zShuttle's goodwill, and engendering confusion in the marketplace.

69. zShuttle has no adequate remedy at law for Defendants' misconduct.

70. Unless Defendants are enjoined and restrained from continuing their infringement, consumers will continue to be confused and zShuttle's injuries will continue to occur.

71. zShuttle is entitled to recover up to three times its actual damages, as well as Defendants' gains, profits, and advantages as a result of Defendants' infringement, in an amount to be proven at trial.

72. Defendants' intentional and willful misconduct renders this an exceptional case, entitling zShuttle to attorney's fees and to treble damages, statutory damages, and interest, pursuant to 15 U.S.C. § 1117(b) & (c).

### Count III – Unfair Competition and False Designation of Origin
### 15 U.S.C. § 1125(a)

73. zShuttle realleges and incorporates by reference the averments of all preceding paragraphs as if set forth fully in this paragraph.

19

74. zShuttle owns all right, title, and interest in the registered SUPERSHUTTLE® Marks and EXECUCAR® Mark.

75. zShuttle, on its own and/or through its predecessors in interest and/or licenses, has had rights in the SUPERSHUTTLE name in connection with airport transportation and reservation services, dating back to at least as early as 1983, and rights in the EXECUCAR® Mark in connection with airport transportation services dating back to at least as early as 1989.

76. Defendants' use in commerce of one or more of the registered SUPERSHUTTLE® Marks and the EXECUCAR® Mark infringes zShuttle's rights in its registered marks, in violation of 15 U.S.C. § 1114 because it renders Defendants' airport transportation and reservation services confusingly similar to identical services zShuttle offers under its identical registered marks.

77. Defendants' unauthorized use of one or more of the registered SUPERSHUTTLE® Marks and the EXECUCAR® Mark creates the erroneous impression in consumers' minds that Defendants' services are approved, sponsored, endorsed, or guaranteed by, or are in some way affiliated with zShuttle and the zShuttle's registered marks.

78. Defendants' use in commerce of one or more of the registered SUPERSHUTTLE® Marks and EXECUCAR® Mark has caused irreparable injury to zShuttle by destroying consumers' association of the SUPERSHUTTLE® Marks and EXECUCAR® Mark with zShuttle, allowing Defendants to unjustly profit from zShuttle's goodwill, and engendering confusion in the marketplace.

79. zShuttle has no adequate remedy at law for Defendants' misconduct.

80. Unless Defendants are enjoined and restrained from continuing their infringement, consumers will continue to be confused and zShuttle's injuries will continue to occur.

81.     zShuttle is entitled to recover three times its actual damages, as well as Defendants' gains, profits, and advantages as a result of Defendants' infringement, in an amount to be proven at trial.

82.     Defendants' intentional and willful misconduct and unfair competition practices renders this an exceptional case, entitling zShuttle to attorney's fees and to treble damages, statutory damages, and interest, pursuant to 15 U.S.C. § 1117(b) & (c).

## Count IV – Contributory Trademark Infringement
### (As to Defendant Bessoni)

83.     zShuttle realleges and incorporates by reference the averments of all preceding paragraphs as if set forth fully in this paragraph.

84.     Defendants are engaging in illegal conduct, including without limitation, the advertisement, promotion, provision, offer for sale, sale, and provision of competing airport transportation and reservation services, in violation of the Lanham Act.

85.     Defendant Bessoni has actual knowledge of the illegal activities from, at a minimum, prior business dealings with zShuttle and written notice of infringement sent from zShuttle to Defendants.

86.     With blatant disregard to zShuttle's written notice and rights in the SUPERSHUTTLE® Marks and EXECUCAR® Mark, Defendant Bessoni has continued to materially encourage, enable, and contribute to ShuttleFare's counterfeiting and infringing activities by, among other things, advertising, promoting, offering, selling and providing the competing airport transportation services and accepting payment for the identical services.

87.     Defendant Bessoni is therefore contributorily liable for the counterfeiting and infringing activities alleged in this Complaint, in violation of the Lanham Act and the common law.

88.     zShuttle has no adequate remedy at law for the contributory trademark infringement of Defendant Bessoni, and has suffered irreparable harm as a result of the contributory infringing conduct of Bessoni.

89.     As a result of Bessoni's wrongful contributory conduct, zShuttle has been damaged in an amount not as yet determined or ascertainable. At a minimum, however, zShuttle is entitled to injunctive relief, an accounting of Defendants' profits, actual damages, punitive damages, attorney's fees, the costs of this action, and any and all other relief authorized by law.

## Count V – Trademark Infringement and Unfair Competition
## Missouri Common Law

90.     zShuttle realleges and incorporates by reference the averments of all preceding paragraphs as if set forth fully in this paragraph.

91.     zShuttle owns common law trademark rights in the SUPERSHUTTLE® Marks and has priority rights in and to the SUPERSHUTTLE name in connection with airport transportation and reservation services that date back to at least as early as 1983.

92.     zShuttle owns common law trademark rights in the EXECUCAR® Mark and has priority rights in and to the EXECUCAR® Mark in connection with airport transportation services that date back to at least as early as 1989

93.     zShuttle, on its own and through its predecessors in interest and licensees, has used the SUPERSHUTTLE® Marks and EXECUCAR® Mark continuously and consistently for an extended period of time to identify, advertise, promote, sell, and provide its airport transportation and reservation services, which has indelibly impressed on the minds of the consuming public the impression that such marks identifies zShuttle as the source of airport transportation and reservation services offered in connection with the marks.

94. Defendants' unauthorized use of the SUPERSHUTTLE® Marks and EXECUCAR® Mark began long after zShuttle first began using said marks in connection with airport transportation and reservation services.

95. Defendants' acts have created, and unless restrained by this Court, will continue to create, a likelihood of confusion and deception of the consuming public, causing irreparable injury to zShuttle for which zShuttle has no adequate remedy at law.

96. Defendants' conduct constitutes trademark infringement and unfair competition under the common law of Missouri by a deliberate course of conduct, all without authorization, license, privilege, or justification.

97. Upon information and belief, Defendants have acted with full knowledge of zShuttle's rights in and use of the SUPERSHUTTLE® Marks and EXECUCAR® Mark, and without regard to the likelihood of confusion and deception of the public created by Defendants' activities.

98. Defendants' conduct demonstrates an intentional, willful, and malicious intent to trade on the goodwill associated with zShuttle, to the substantial and irreparable injury of zShuttle.

99. As a result of Defendants' acts, zShuttle has been damaged and will continue to be damaged in an amount not as yet determined or ascertainable. At a minimum, however, zShuttle is entitled to injunctive relief, an accounting of Defendants' profits, actual damages, punitive damages, attorneys' fees and costs, and any and all other relief authorized by law.

**Prayer for Relief**

Based on the foregoing, zShuttle requests that this Court enter judgment in its favor on each and every claim for relief set forth above and award it relief, including without limitation, the following:

23

1.     Preliminarily and permanently enjoin and restrain Defendants, and their officers, directors, agents, dealers, representatives, servants, and employees, and all others acting in concert with Defendants, from:

    a. Advertising, marketing, offering for sale, selling, or providing airport transportation and reservation services and any other services bearing the SUPERSHUTTLE® Marks or EXECUCAR® Mark or confusingly similar imitations thereof;

    b. Using the SUPERSHUTTLE® Marks and EXECUCAR® Mark, or any confusingly similar iteration thereof, in any manner on or in connection with airport transportation, reservation, or related services;

    c. Using any trademark, name, logo, design, or source designation of any kind on or in connection with goods or services that is a copy, reproduction, colorable imitation, or simulation of, or confusingly similar to the SUPERSHUTTLE® Marks or EXECUCAR® Mark;

    d. Using any trademark, name, logo, design, or source designation of any kind on or in connection with goods or services that is likely to cause confusion, mistake, deception, or public misunderstanding that such goods or services are produced or provided by zShuttle, or are sponsored, authorized, or endorsed by zShuttle, or are in any manner connected to or related to zShuttle;

    e. Using any subdomain containing the SUPERSHUTTLE® Marks or EXECUCAR® Mark;

    f. Using the SUPERSHUTTLE® Marks or EXECUCAR® Mark in domain names;

24

g.  Using the SUPERSHUTTLE® Marks or EXECUCAR® Mark in keywords for sponsored advertising online;

h.  Using the SUPERSHUTTLE® Marks or EXECUCAR® Mark in metatags on any and all of its websites;

i.  Passing off, palming off, or assisting in passing off or palming off goods or services as those of zShuttle, or otherwise continuing any and all acts of unfair competition as alleged in this Complaint; and

j.  Effecting assignments or transfers, forming new entities or associations, or utilizing any other device for the purpose of circumventing or otherwise avoiding the prohibitions set forth in this Paragraph 1;

2.  Direct Defendants to file with this Court and serve on zShuttle's counsel within thirty (30) days after the service on Defendants of the injunction, a report in writing under oath setting forth in detail the manner and form in which Defendants have complied with the injunction;

3.  Order Defendants to provide zShuttle with an accounting of any and all profits derived by Defendants from the sale or rendering of transportation and reservation services in connection with the SUPERSHUTTLE® Marks and EXECUCAR® Mark;

4.  Award zShuttle Defendants' profits resulting from the acts of counterfeiting and infringement alleged in this Complaint in order to redress Defendants' unjust enrichment and to deter their infringement of the SUPERSHUTTLE® Marks and EXECUCAR® Mark, pursuant to 15 U.S.C. § 1117(a)(1);

5.  Award zShuttle any damages sustained and the costs of this action, pursuant to 15 U.S.C. § 1117(a)(2);

6. Triple any damages and increase any profits awarded to the amount this Court finds just, pursuant to 15 U.S.C. § 1117(a);

7. Award zShuttle, should zShuttle so elect, an award of statutory damages pursuant to 15 U.S.C. § 1117(c) of up to $2,000,000 for each counterfeit mark for each good and service Defendants have willfully counterfeited and infringed;

8. Award zShuttle its damages, together with prejudgment interest, for the lost sales, loss of goodwill, and other damages suffered by zShuttle as a result of the acts of trademark infringement and unfair competition by Defendants, pursuant to the laws of the State of Missouri;

9. Grant to zShuttle such further relief as may be equitable and proper.

## Jury Demand

zShuttle demands a trial by jury on all issues so triable.


Dated: October 25, 2024

Respectfully Submitted,

s/ *Cheryl L. Burbach*
Cheryl L. Burbach, MO State Bar No. 48605
cburbach@hoveywilliams.com
C. Blair Barbieri, MO State Bar No. 67941
bbarbieri@hoveywilliams.com
HOVEY WILLIAMS LLP
10801 Mastin Boulevard, Suite 1000
Overland Park, Kansas 66210
(913) 647-9050   Fax: (913) 647-9057

ATTORNEYS FOR PLAINTIFF